IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Alexis Parker and Latisha Rhodes,** )<br>      **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**IAS Logistics DFW, LLC, d/b/a** )<br>**Pinnacle Logistics,** )<br>      **Defendant.** ) | No. 20 C 5103<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

      For the reasons stated below, Plaintiffs' motion for conditional certification [26] is granted as set forth in this order. The parties are directed to confer within 14 days of the date of entry of this order to discuss the notice process and any necessary alterations to the definition of the collective based on this order. The Court directs the parties to make every effort to resolve any notice issues between themselves. Within 10 days of conferring, Plaintiffs are directed to submit a statement setting forth the form of notice and procedure for notifying the relevant employees.

## STATEMENT

      Pinnacle provides national transportation and logistics services, including line haul (overnight) transportation, warehouse handling, and aircraft parking and handling. These services are divided into three different operations: aviation/warehouse services; trucking; and ground-support equipment. According to Pinnacle, Plaintiffs and all of the 113 opt-ins work in the aviation/warehouse division.

      Plaintiffs allege that two different Pinnacle policies violated the law. First, they contend that Pinnacle failed to include all streams of pay[1] into its overtime calculus as required by statute and its accompanying regulations. *See* 29 C.F.R. §§ 778.108, 778.203, 778.207(b). Plaintiffs also allege that Pinnacle automatically deducted 30 to 60 minutes as a meal break, depending on the number of hours worked, from each hourly-paid worker's time, without regard to whether the break was actually taken. According to Plaintiffs, they "often worked through their meal breaks because management did not allow breaks during periods of heavy workloads." (Pls.' Mem. Supp. Mot. Conditional Certification, Dkt. # 27, at 8.) Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a collective action on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). Plaintiffs seek to certify the following collective action:

---

[1] Pinnacle paid additional amounts for different types of shifts, e.g., weekends and nights, which Plaintiffs refer to as a "shift differential."

> All hourly-paid employees, including, but not limited to, warehouse agents, ramp agents, tug drivers, ground control workers, forklift drivers, maintenance workers, team leads, supervisors and managers, employed by Defendant at any time on or after [three years prior to the date on which the court approves collective certification].

(Pls.' Mem. Supp. Mot. Conditional Certification, Dkt. #27, at 3.)

The FLSA does not specify how courts should handle collective actions, so courts have "wide discretion" in determining how these suits should proceed. *Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citation omitted). "In this district, courts employ a two-step process for determining whether an FLSA suit should be certified as a collective action." *Rodriguez v. Smolka*, No. 19 C 8390, 2021 WL 83759, at *2 (N.D. Ill. Jan. 11, 2021). "At step one -- the current step -- the plaintiffs must show that the other potential plaintiffs are 'similarly situated' by making a 'modest factual showing sufficient to demonstrate that they and [the other] potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id*. (citation omitted). "The modest factual showing is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties." *Beeson v. C-Cat, Inc.*, No. 20 C 252, 2020 WL 7425339, at *2 (S.D. Ind. Dec. 18, 2020) (citation and internal quotation marks omitted).

In addition to their own declarations, Plaintiffs point to those by ten other workers who state that they did not receive the proper overtime rate based on the shift differentials. (Pls.' Mem. Supp. Mot. Conditional Certification, Dkt. # 27, at 11) (citing declarations). The same workers state that Pinnacle applied an automatic wage deduction for meal breaks, regardless of whether the employees took the break. (*Id*.) The employees' declarations are based on their own experiences as well as conversations with coworkers. Plaintiffs also point out that 113 individuals have signed consent forms to join this action, "manifesting their belief in this action." (Pls.' Reply, Dkt. # 56, at 2.)

Pinnacle objects to conditional certification, arguing that the thousands of employees to whom Plaintiffs wish to send notice represent a "broad and diverse cohort . . . . span[ning] several service locations across multiple states . . . regardless of position held, hours worked, or field of operations/service," and whose positions are in "entirely different industries (i.e., trucking, aviation/warehouse logistics)" with "distinct compensation programs." (Def.'s Mem. Opp'n Pls.' Mot., Dkt. # 53, at 2.) But Plaintiffs "do not have to show that the potential [collective] members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *5 (N.D. Ill. Feb. 28, 2019) (citation omitted and emphasis in original).

Moreover, as to the meal-break claim, Pinnacle's Vice-President of Administration attests that non-exempt employees throughout the company are subject to the same 30-minute meal-break policy, stating that "[s]ubject to certain exceptions for certain employees who[] work in Pinnacle's trucking division, non-exempt employees who[] work shifts of eight hours or more are scheduled for one or more 30[-]minute meal breaks, depending on the length of their shift."

(Def.'s Mem. Opp'n Pls.' Mot., Dkt. # 53-2, Tran Aff., ¶ 9.) Any material differences among the employees can be raised by Pinnacle at the second step of certification.[2]

With respect to the failure to pay a shift differential, Plaintiffs refer not only to their declarations, but also to Pinnacle's employee handbook, which states that "[o]vertime for non-exempt employees is paid at 1-1/2 times the *straight time rate* for hours worked in excess of forty (40) hours in a work week, or as otherwise required by applicable law." (Def.'s Mem. Opp'n Pls.' Mot., Ex. D, Dkt. # 53-4, at 2) (emphasis added). Plaintiffs assert that "overtime should not have been paid based on the 'straight time rate' but must also include shift differentials, which Defendant failed to do." (Pls.' Reply, Dkt. # 56, at 1) (citing 29 C.F.R. § 778.207(b) ("The [FLSA] requires the inclusion in the regular rate of such extra premiums as nightshift differentials.")). The Court recognizes that the handbook includes the qualification "or as otherwise applicable by law," but the general statement in Pinnacle's employee handbook that it has pays overtime based on the straight-time rate, in conjunction with the declarations from Plaintiffs and opt-ins, is sufficient, at this stage of the litigation, to establish the existence of an alleged policy in violation of the law. As with the meal-break deduction, however, Pinnacle's Vice-President of Administration attests that hourly workers in the trucking division are not eligible to receive a shift differential. (Def.'s Mem. Opp'n Pls.' Mot., Dkt. # 53-2, Tran Aff., ¶ 4.) Thus, because hourly workers in the trucking division are not similarly situated to the other hourly workers, they should not be included in the group who receives notice of the collective action.

Pinnacle also notes that certain employees were subject to arbitration agreements, and thus are not properly included in a collective action. The Seventh Circuit has stated as follows with respect to arbitration provisions in collective-action cases:

> We hold that when a defendant opposing the issuance of notice alleges that proposed recipients entered arbitration agreements waiving the right to participate in the action, a court may authorize notice to those individuals unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020). Here, not only do Plaintiffs allege that the arbitration agreements and waiver provisions were entered into with another

---

[2] If certain employees in the trucking division are uniformly not subject to a 30-minute meal-break deduction, then they should not receive notice to opt in to a collective action challenging the proper application of that time deduction. The Court disagrees with Plaintiffs' assertion that non-exempt trucking-division employees should receive notice and be allowed to opt in to this aspect of the case, but simply not receive any damages, should the collective action be successful. If an identifiable group of trucking-division employees are not similarly situated with respect to the meal-break deduction, then they are not eligible to opt in to this aspect of Plaintiffs' claim.

entity, not Pinnacle, but Pinnacle also does not seek discovery on the agreements to establish their validity. Accordingly, the existence of an arbitration provision does not preclude the issuance of notice at this stage of the process.

Pinnacle further argues that its timekeeping policies prohibit unpaid work. But "[t]he fact that a company has a written policy 'does not defeat conditional certification when a plaintiff provides countervailing evidence' of a practice that violates the FLSA." *Ruffolo,* 2019 WL 978659, at *3 (citation omitted). Here, Plaintiffs and several declarants state that "[d]ue to the daily workload and time constrictions on inbound and/or outbound schedules, we often worked through our shifts without taking breaks" and that on occasion, "[m]anagement would not let me and my fellow warehouse coworkers take meal breaks." (Pls.' Mem. Supp. Conditional Certification, Dkt. # 27-4, Ex. D, Parker Decl., ¶¶ 12, 14.) To the extent that Pinnacle attempts to address the merits of Plaintiffs' claims, that inquiry is inappropriate at this stage. *See Ruffolo*, 2019 WL 978659, at *3; *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 C 3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA.") (emphasis in original).

Pinnacle also raises issues with the proposed notice. The Court directs the parties to confer regarding disputes as to the form of notice; they shall make every effort to resolve outstanding issues between themselves.

For the reasons stated above, Plaintiffs' motion for conditional certification is granted as stated in this order.

Date: March 24, 2021

_____
**Ronald A. Guzmán**
**United States District Judge**