**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALEXIS PARKER and LATISHA RHODES,, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 2020-CV-005103 |
| IAS LOGISTICS DFW, LLC, d/b/a PINNACLE LOGISTICS, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND FOR
CERTIFICATION OF CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES
AND INCORPORATED BRIEF IN SUPPORT**

Plaintiffs, Latisha Rhodes and Alexis Parker (collectively, "Plaintiffs"), and Defendant, IAS Logistics DFW LLC d/b/a Pinnacle Logistics ("Defendant"), (collectively, "the Parties"), have reached what they believe to be a full and fair resolution for the members of the FLSA Collective Action and Rule 23 Class. Plaintiffs, on behalf of themselves and all others similarly situated, and without objection from Defendant, respectfully submit the Parties' proposed $3,250,000 non-reversionary settlement for the Court's approval. As described herein, the proposed Settlement satisfies all criteria for preliminary approval. As such, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release, appended as **Exhibit 1**; (2) certify the Settlement Class and Collective Action, and appoint Plaintiffs' Counsel as Class Counsel under Fed. R. Civ. P. 23; (3) approve the proposed settlement process for Class Members and FLSA Collective Members; and (4) approve the Notice of Proposed Settlement of Class and Collective Action Settlement, appended as **Exhibit 2** and order its distribution; and (4) approve the proposed schedule for final approval, including scheduling the

Fairness Hearing.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III.  SUMMARY OF SETTLEMENT TERMS .................................................... 3

IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL .................................... 5

   A.  Class Action Settlement Approval Process .......................................... 5

   B.  The Criteria for Preliminary Settlement Approval Are Satisfied ....................... 6

     1.  Strength of the Claims Compared to the Amount of the Settlement and Allocation of the Settlement Payment ................................................... 7

     2.  Complexity, Length, and Expense of Further Litigation ................................ 9

     3.  At This Preliminary Stage, There is No Opposition to the Settlement .......................... 9

     4.  Opinions of Counsel ....................................................... 10

     5.  The Settlement Was the Result of Arm's Length Negotiations Without Any Collusion. 10

V.  THE PARTIES PROPOSED NOTICE PLAN .............................................. 11

VI.  SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE.................... 11

VIII. ................ CERTIFICATION OF COLLECTIVE ACTION AND CLASS ACTIONS FOR SETTLEMENT PURPOSES ............................................................... 12

   A.  The Classes Meet All Four Requirements of FRCP 23(a)............................. 12

     1.  Numerosity ........................................................... 12

     1.  Commonality ......................................................... 13

     2.  Typicality ........................................................... 13

     3.  Adequacy ........................................................... 13

   B.  The Classes Meet the Requirements of FRCP 23(b)(3)............................. 14

     1.  Predominance ....................................................... 14

     2.  Superiority ........................................................... 15

   C.  The Court Should Appoint Class Counsel ....................................... 16

D.   The Court Should Certify the FLSA Collective for Settlement Purposes ........................ 17

E.   Proposed Schedule ........................................................................ 18

VII. CONCLUSION................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 14, 15

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL
3290302 (N.D. Ill. July 26, 2011) ................................................................................ 6

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................. 9

*Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819 (D. Mass. 1987) ............................... 11

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011)....................... 13

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986)................................................ 12

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) .......................................... 8

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013).......................................... 17

*Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006)................................................ 12

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................................................ 6

*Gomez v. PNC Nat'l Bank Assn*, 2014 WL 3640798 (N.D. Ill. 2014)........................................ 15

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400
(E.D. Wis. 2002) ................................................................................................. 7

*Hispanics United of DuPage County v. Village of Addison, Ill.*, 988 F. Supp. 1130 (N.D. Ill.
1997) ................................................................................................................. 7

*In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................... 9, 10

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580
(N.D. Ill. 2016)..................................................................................................... 7

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)......................................................................... 7, 9

*Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir. 1986) ............................................ 15

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) .................................................................. 15

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987)............... 8

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093 (D.C. Cir. 1985)............................... 6

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir.1999) ........................................................ 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................ 11

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ............................................... 10

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002) .......................................... 6

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ............................................................. 13

*Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131 (N.D. Ind. Aug. 2, 1996) ............................................................................................................................... 11

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011) ............................................................... 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006) ..................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ........................................................ 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 1, 2, 12, 14

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 12

Fed. R. Civ. P. 23(g) ................................................................................................................ 16

Rule 23(a) ................................................................................................................................. 13

Rule 23(a)(2) ............................................................................................................................ 13

Rule 23(a)(3) ............................................................................................................................ 13

Rule 23(a)(4) ............................................................................................................................ 14

Rule 23(b)(1), (b)(2), or (b)(3) ............................................................................................... 11

Rule 23(b)(3) .............................................................................................................. 14, 15, 16

Rule 23(b)(3)(A-D) ............................................................................................................ 14, 15

Rule 23(e)(1)(B) ....................................................................................................................... 11

**Treatises**

2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22 .............................. 6

*Manual for Complex Lit.*, at § 21.632–34 .............................................................................. 5, 11

I.    **INTRODUCTION**

Plaintiffs seek preliminary approval of the class and collective action Settlement Agreement and Release ("Settlement Agreement"), which provides for a settlement fund of ***$3.25 million*** to resolve the wage-and-hour claims of approximately 5,291 hourly-paid employees who worked for Defendant in Illinois or Maryland before Defendant ceased its operations in those facilities in May 2020. *See* **Exhibit 1** ("Settlement Agreement"). After extensive arm's length negotiations and the exchange of time and payroll data, and a mediation with Judge James Holderman (Ret.), the Parties believe that they have reached a fair compromise of the claims. *See* Declaration of Jason T. Brown ("Brown Decl."). Plaintiffs assert that IAS Logistics DFW, LLC d/b/a Pinnacle Logistics ("Defendant") violated the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL").  Plaintiffs alleged two discrete wage and hour violations: 1) their wages were automatically deducted for meal breaks even during those instances a full meal break was not taken ("the Meal Break Deduction Claim)," and 2) during workweeks in which they worked overtime (e.g., more than 40 hours in a workweek) and earned a shift differential rate of pay- - a modest increase to their regular rate of pay, the shift differential rate of pay was not included when calculating their overtime rate of pay ("the Shift Differential Claim").  Defendant denies Plaintiffs' allegations.  It is Defendant's position that it properly paid Plaintiffs and other employees.

For settlement purposes and the reasons below, Plaintiffs request that the Court enter the accompanying proposed order: (1) preliminarily approving the settlement as fair, reasonable and adequate, and in the best interest of the Class Members and FLSA Collective Members; (2) reinstating Latisha Rhodes as a named Plaintiff along with the FLSA and Maryland law claims she

1

asserted in the original complaint; (ECF Doc. No. 1);[1] (3) certifying the proposed Illinois Class and the proposed Maryland Class for settlement purposes pursuant to Fed. R. Civ. P. 23; (4) certifying the FLSA Collective Action for settlement purposes pursuant to 29 U.S.C. § 216(b); (5) approving the proposed Notice and the plan for distribution thereof; (6) appointing class representatives and Class Counsel; and (7) setting of dates for the submission of exclusions, objections, and a Fairness Hearing.

## II.    **BACKGROUND**

On August 31, 2020, Plaintiffs Alexis Parker, who worked for Defendant in Rockford, Illinois, and Latisha Rhodes, who worked for Defendant in Baltimore, Maryland, filed a class and collective action lawsuit alleging: 1) Defendant automatically deducted 30 to 60 minutes per shift for meal breaks even during those instances when full meal breaks were not taken ("the Meal Break Deduction Claim"), and 2) Defendant improperly calculated employees' regular rate of pay for overtime purposes ("the Shift Differential Claim"). Plaintiffs sought to represent a nationwide collective action under the FLSA. Parker alleged putative Rule 23 class action claims under the IMWL and the IWPCA. Rhodes alleged putative Rule 23 class action claims under the MWHL and the MWPCL.

On March 24, 2021, the Court conditionally certified a collective action pursuant to § 216(b) of the FLSA.  (ECF Doc. No. 57) On September 9, 2021, the Court granted Defendant's Motion to Dismiss the FLSA claims of non-Illinois Plaintiff Latisha Rhodes and out-of-state opt-

---

[1] On September 9, 2021, the Court granted Defendant's Motion to Dismiss the FLSA claims of non-Illinois Plaintiff Latisha Rhodes and out-of-state opt-in plaintiffs for lack of personal jurisdiction.  (ECF Doc. No. 99) For the limited and sole purpose of this Settlement, Defendant agrees not to challenge the Court's personal jurisdiction over it as to the state and federal law claims of Plaintiff, Latisha Rhodes, Class Members who worked for Pinnacle in Baltimore, Maryland (and never in Illinois), and FLSA Collective Members who worked for Pinnacle in Baltimore, Maryland (and never in Illinois).  This concession is for the sole purpose of administering an efficient and expedient Settlement. Neither the existence nor the fact of this provision as to jurisdiction in this Agreement shall be referred to, relied upon, or otherwise argued to create jurisdiction or the waiver of any defenses to jurisdiction in any other claim, lawsuit, arbitration demand, or administrative proceeding.

in plaintiffs for lack of specific personal jurisdiction over Defendant. (ECF Doc. No. 99) On June 28, 2021, the Court approved the Parties' stipulation to send notice to workers in Illinois, (ECF Doc. Nos. 73) who were notified of their right to opt-in to the case by September 16, 2021.

On February 11, 2022, the parties participated in a partial-day mediation overseen by Judge Holderman and shortly thereafter, reached a settlement in principle to resolve all matters pertaining to, arising from, and associated with the Litigation. Brown Decl. ¶ 5.

## III.     SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides that Defendant will pay $3,250,000 to resolve and satisfy all monetary obligations, including Class Counsel's attorneys' fees and litigation costs, Settlement Administration Expenses, payments to Plaintiffs, Class Members, and FLSA Collective Members, Enhancement Awards to Plaintiffs, and all other applicable taxes, interest, and payroll taxes. *Settlement Agreement*, § 3.1.A. The amount available for payments to Plaintiffs, Class Members, and FLSA Collective Members after deduction for Class Counsel's attorneys' fees and litigation costs, Settlement Administration Expenses, Enhancement Awards, and all other applicable taxes, interest, and payroll taxes is the "Net Settlement Fund." *Id.* 3.4.A. The Net Settlement Fund is estimated to be $2,073,354.67, which is nearly 78% of the $2,659,437.40 unpaid wages Class Counsel estimated to be recoverable if successful at trial, based on extensive review of the Class Members' time and payroll records. Brown Decl. ¶ 4.

The Net Settlement Fund will be divided into an Illinois Class Fund, a Maryland Class Fund, and an FLSA Collective Fund. *Settlement Agreement*, § 3.4. The Illinois and Maryland Class Funds are estimated to be $412,063.70 and $624,613.64, respectively, and will be distributed to the Illinois and Maryland Class Members (excluding those who opt out) *pro rata* based on the number of weeks each employee worked during the Covered Period. *Id.* §§ 3.4.A (ii) and (iii), 3.4.E. The other half of the Net Settlement Fund (i.e. $1,036,677.34) is allocated to the FLSA

Collective Fund. *Id.* § 3.4.A(i). The FLSA Collective Fund is allocated *pro rata* similarly to the Illinois and Maryland Class Funds, however, those individuals who previously filed a consent form on or before the September 16, 2021 deadline (of whom there are approximately 744) will receive a double share of the FLSA Collective Fund allocation. *Id.*; Brown Decl. ¶ 7. For tax purposes, 50% of each settlement payment shall be allocated to wage damages and 50% to non-wage damages. *Settlement Agreement*, § 3.6.C. The Settlement is non-reversionary. The funds associated with any checks that remain uncashed after the 120-day void deadline, less any funds necessary for Settlement Administration, shall be distributed equally to two *cy pres* recipients: 50% to Northern Illinois Food Bank and 50% to Maryland Food Bank. *Id.* at §§ 3.4.F; 3.5.

In addition to the Net Settlement Fund, Class Counsel will request up to one-third of the Settlement Fund in attorneys' fees ($1,834,333.33) and will request up to $30,000 in reimbursement of reasonable litigation costs and expenses, *id.* at § 3.2.A, as well as $10,000 Enhancement Awards to each of Plaintiffs Alexis Parker and Latisha Rhodes for services rendered as class representatives to, and for the benefit of, the Class Members. *Id.* at § 3.4. Class Counsel will file a motion for approval of the proposed attorneys' fees, costs, and Enhancement Awards at least fourteen (14) days prior to the Fairness Hearing.

The two proposed class representatives will provide general releases of all legally releasable claims, whether known or unknown, based upon any conduct, action, or omission by Defendant up to and including the date that Plaintiffs execute the release, in exchange for their Enhancement Awards, *id.* at § 3.7.D. The release applicable to members of the FLSA Collective Action and Class are limited to all FLSA claims and all claims under Illinois and Maryland state and local wage-and-hour laws and derivative claims, including all claims that were or could have been pled in this action from August 31, 2017 through the date of preliminary approval. Specifically, Class Members who do not submit requests for exclusion within sixty (60) days after

4

the Claims Administrator mails the Notice will release Defendant from state and local law wage-and-hour claims and derivative claims, *id.* at § 3.7.A. FLSA Collective Members who either previously filed consent forms or who cash their settlement checks will opt-in to the Collective Action and release Defendant from FLSA claims and all wage and hour claims, and derivative claims, including all claims that were or could have been pled in this Litigation during the Covered Period. *Id.* at § 3.7.B.

The Claims Administrator will mail each Class and FLSA Collective Member a copy of the Notice, which details each Class Member's and FLSA Collective Member's Individual Settlement Amount, their options to object and/or exclude themselves from the Settlement, and how the Settlement affects their rights. *Settlement Agreement, Ex. A.* If the Class Members and FLSA Collective Members are not satisfied with the specific amount of their allocation, they can elect to submit a valid request for exclusion from the Settlement and retain their claims or object to the Settlement within sixty (60) days after receiving the Notice. *Id.* at § 1.22. The Parties have agreed to use Analytics Consulting LLC ("Analytics") as the Claims Administrator. Brown Decl. ¶ 17. Analytics previously performed the FLSA notice mailing in this case in 2021. *Id.* at ¶ 18. Analytics has estimated that its fees and costs will be approximately $43,312.00. *Id.* at ¶ 19.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    Class Action Settlement Approval Process

Approval of class action settlements is a three-step process: (1) preliminary approval of the settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

5

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the process by granting preliminary approval of the Settlement.

The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. If so, the Court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

### B. The Criteria for Preliminary Settlement Approval Are Satisfied

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at \*6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the

6

strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). This mirrors the analysis pertaining to final approval of the settlement, although generally the demands are lower at this preliminary stage when there are no objections to the settlement. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig*., 314 F.R.D. 580, 589 (N.D. Ill. 2016) ("[A]t the preliminary approval stage, the extent of the district court's inquiry into the appropriateness of class certification and the reasonableness of the settlement terms depends, as it must, on the circumstances of the individual case."). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

### 1. Strength of the Claims Compared to the Amount of the Settlement and Allocation of the Settlement Payment

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker &*

*Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Based on time and payroll data Defendant produced, Class Counsel estimated that the Class Members stood to recover up to $2,659,437.40 unpaid wages if successful at trial, plus liquidated damages and penalties. Brown Decl. ¶ 4. This is the sum of the $166,232.78 attributable to the overtime rate claims and $2,493,204.62 attributable to the meal break claims. *Id.*. The Settlement provides Class Members and FLSA Collective Members with an estimated total of $2,073,354.67, which is nearly a 78% rate of recovery, or stated differently, a 100% rate of recovery on the overtime rate claims and nearly a 77% rate of recovery on the meal break claims.

This is an excellent result for Class Members and Collective Members given Defendant's available defenses, which include that Defendant properly paid Plaintiffs, Class Members, Collective Members and other employees, that the additional compensation did not need to be included in the regular rate or may have set-off overtime obligations, that liquidated damages should not be awarded, and/or that any recovery should be limited to the FLSA's two-year statute of limitations, as opposed to the three-year period that applies to willful violations. *Id.* at ¶ 9. Further, Defendant may have had strong defenses against certification and liability on the meal break deduction issue, as Defendant's records showed that there were thousands of instances in which employees' meal break deductions were cancelled and they were paid for working through

their full shifts. *Id.* at ¶ 10. By settling these claims, the Class Members are assured a significant recovery.

### 2. Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013). Moreover, it cannot be ignored that this settlement puts money in the hands of Class Members when they need it the most, as the nation continues to endure a world-wide pandemic and economic uncertainty.

### 3. At This Preliminary Stage, There is No Opposition to the Settlement

The class representatives Parker and Rhodes have signed the Settlement Agreement, thus indicating their support, and Class Counsel is unaware of any opposition to the settlement. Brown Decl. ¶ 12. Thus, this factor supports preliminary approval.

### 4. Opinions of Counsel

Class Counsel Fish Potter Bolaños, P.C. and Brown, LLC both have substantial experience in employment litigation and class action litigation. Brown Decl. ¶¶ 14-15 (citing firm resumes). Class Counsel had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. Brown Decl. ¶ 13. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Class Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. *Id*. at ¶ 3. Defendant's counsel is similarly experienced in defending FLSA and state wage cases. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

### 5. The Settlement Was the Result of Arm's Length Negotiations Without Any Collusion.

The Settlement was the result of adversarial, arm's length negotiations, conducted based on an analysis of payroll data Defendant produced for the Class Members. Brown Decl. ¶ 3. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall*

*Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).

## V.      THE PARTIES PROPOSED NOTICE PLAN

The notice and procedure outlined in Section 2.4 of the Settlement Agreement provides proper notice to the members of the FLSA Collective and Classes. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811– 12 (1985). The Parties' proposed notice and procedure satisfy the notice requirements.   The Notice informs the Class Members and FLSA Collective Members of their right to object to the settlement, or to opt out of, or exclude themselves from, the settlement if they would prefer not to be bound by it.  In addition, Defendant, through the Claims Administrator, will cause notice of the proposed settlement to be served pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## VI.      SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The Court should schedule Fairness Hearing to hear all evidence and argument necessary to determine whether the settlement should be finally approved, whether any objections thereto should be overruled, and whether the proposed attorneys' fees, costs, and enhancement payments

11

should be approved. To allow time for the Notice plan to be administered, the Court should schedule the final Fairness Hearing approximately 110 days from the date of preliminary approval.

## VIII. CERTIFICATION OF COLLECTIVE ACTION AND CLASS ACTIONS FOR SETTLEMENT PURPOSES

The Parties seek certification of the FLSA Collective Act, the Illinois Class, and the Maryland Class for settlement purposes. The FLSA Collective Action consists of all current and former hourly-paid warehouse workers employed by Defendant, including, but not limited to, warehouse agents, ramp agents, tug drivers, ground control, forklift drivers, team leads, maintenance worker and supervisors, who worked at least one shift Defendant's facility in Baltimore, Maryland and/or Defendant's facility in Rockford, Illinois between August 31, 2017through the date of the Order Granting Preliminary Approval. *Settlement*, § 1.14. The Class consists of the Illinois Class and the Maryland Class, with each Class consisting of the same set of employees who make up the FLSA Collective Action, who worked in Illinois and Maryland, respectively. *Id.* § 1.15, 1.18.

### A. The Classes Meet All Four Requirements of FRCP 23(a).

#### 1. Numerosity

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). Here, numerosity is satisfied because there are approximately 5,291 persons in the Classes, with over 2,000 persons in each of the Illinois and Maryland Classes, respectively. Brown Decl., ¶ 4. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (concluding that "generally . . . more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 336 (N.D. Ill. 2006) ("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); As such, the numerosity standard is met.

12

### 1. Commonality

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class." "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common questions here include whether Defendant improperly calculated Class Members' overtime rates of pay and whether the Class Members worked through meal breaks they allege were automatically deducted from their pay.

### 2. Typicality

"[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the Plaintiffs' legal theory to satisfy Rule 23(a)(3)"). The class representatives each worked in positions, locations, and time periods covered by the classes they seek to represent, and claim to have suffered from the overtime rate and meal break violations in the same manner as the Class Members.

### 3. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the instant case, the class representatives Parker and Rhodes worked for Defendant and allege they suffered from the same

13

allegedly unlawful practices as all other non-exempt employees. They have been cooperative throughout this Litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, the class representatives' claims pose no conflicts with those of the other Class members because their claims and those of the entire Class turn on the existence and implementation of the same wage and time policies, which are alleged to have improperly calculated the regular rate for overtime purposes and improperly deducted meal time from time worked. The class representatives' financial interests are not in conflict with those of other Class members. Accordingly, Plaintiffs Alexis Parker and Latisha Rhodes should be appointed as class representatives.

Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; Plaintiffs' counsels Fish Potter Bolaños, P.C. and Brown LLC have substantial experience in employment litigation and class action litigation. *See* Brown Decl., ¶¶ 14-15.

**B.      The Classes Meet the Requirements of FRCP 23(b)(3).**

Rule 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

**1.      Predominance**

The standard to determine whether common questions predominate is a flexible one, focusing

on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also*, *e.g.*, *Jenkins* v. *Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil*, 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler*, 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendant properly paid their employees. This will boil down to an analysis of whether the overtime rate was properly calculated and whether employees had improper automatic meal break deductions.

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nat'l Bank Assn*, 2014 WL 3640798 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998).

### 2. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

15

There is no compelling reason to adjudicate thousands of identical separate actions. Because of the uniformity of the factual and legal claims of the Class Members, it would be needlessly repetitive if the Class Members were forced to prosecute their claims individually. A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for all Parties. With multiple claims, Defendant's legal expenses (owed to attorneys for both sides) could be greater than the overall damages at stake in the class action.

### C. The Court Should Appoint Class Counsel

In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Brown, LLC and Fish Potter Bolaños, P.C., attorneys for Plaintiffs Alexis Parker and Latisha Rhodes in this Litigation, satisfies each of the above factors.

Here, Fish Potter Bolaños, P.C. and Brown, LLC have represented the Plaintiffs from the inception of the Litigation and have dedicated hundreds of hours of attorney hours into this matter. Brown Decl. ¶ 2. Brown, LLC performed substantial work identifying, investigating, and settling Plaintiffs' and the Class Members' claims. Among other tasks, counsel engaged in motion practice regarding conditional certification and personal jurisdiction, propounded written discovery requests on Defendant, reviewed a large volume of policy documents and payroll data that was used to create a classwide damage model, and participated in a partial-day mediation session and subsequent negotiations with Judge Holderman. *Id.* at ¶ 3.

Brown, LLC and Fish Potter Bolaños, P.C. have substantial experience handling complex and class action cases, and are well-versed in the law governing wage & hour class and collective actions. *Id*. at ¶¶ 14-15. The work that Brown, LLC and Fish Potter Bolaños, P.C. have performed thus far in litigating and settling this case demonstrates their commitment to the Classes. If appointed as Class Counsel, Brown, LLC and Fish Potter Bolaños, P.C. will dedicate the necessary additional time and labor to ensure that Class Members receive their Notices, understand their options, and resolve or address any of their questions. *Id*. at ¶ 16. Accordingly, the Court should approve this Motion and appoint Brown, LLC and Fish Potter Bolaños, P.C. as Class Counsel.

### D. The Court Should Certify the FLSA Collective for Settlement Purposes

The Court has already granted conditional certification based on Plaintiffs' showing regarding Defendant's meal break and overtime rate policies, (ECF Doc. No. 57) and approved notice to employees who worked in Illinois (ECF Doc. No. 72). Plaintiff now requests certification of the FLSA Collective Action as defined in the Settlement Agreement, which includes Maryland employees and encompasses the same Covered Period as the Class.[2] Certification of the FLSA Collective Action is appropriate based on the same similarities that supported the Court's previous decision to grant conditional certification and that support certification of the Rule 23 Class. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, . . . there isn't a good reason to have different standards for the certification of the two different types

---

[2] The FLSA collective action previously certified by the Court was limited to hourly paid workers who lived in Illinois and worked at least one shift for Defendant in Rockford, Illinois between June 24, 2018 and June 24, 2021. (ECF Doc. No. 72). The FLSA Collective Action proposed herein as related to Rockford, Illinois FLSA Collective Members include the dates of August 31, 2017 to June 23, 2018, and June 25, 2021 through the date of the Preliminary Approval Order so that it covers the same Covered Period as the Maryland Class and the Illinois Class. *Settlement*, § 2.1, B.

of action….").

### E.    Proposed Schedule

The Parties propose the following schedule for the issuance of Notice and Court approval:

A.    Within 14 calendar days after the Court issues its preliminary approval order regarding the Settlement, Defendant will provide the Claims Administrator, on a confidential basis, with a list, in electronic form, of the names and last known addresses, telephone numbers, social security numbers, and number of weeks worked for Defendant during the Covered Period for all Class and FLSA Collective Action ("Notice List"), as described in the Settlement Agreement.

B.    Within 21 calendar days after receiving the Notice List, or as soon thereafter as practicable, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice to all Class and FLSA Collective Members.

C.    The Opt-Out/Objection Deadline is 60 calendar days from the date the Claims Administrator mails the Notice to Class and FLSA Collective Members.

D.    Within 10 calendar days of the filing of the Motion for Preliminary Approval of the Settlement, Defendant, through the Claims Administrator, will (or will have already) mail(ed) a notice to the Attorney General of the United States, the Attorney General of the States of Illinois, and the Attorney General of each other state where Class Members reside according to Defendant's records in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715.

E.    No later than 7 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted.


Dated: May 4, 2022                                 Respectfully Submitted,

                                                   By:  /s/ Jason T. Brown
                                                         One of Plaintiffs' Attorneys

Jason T. Brown
Nicholas R. Conlon
**Brown, LLC**
205 North Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: (877) 561-0000
Facsimile: (855) 582-5297

18

jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

David Fish
John Kunze
**Fish Potter Bolaños, P.C.**
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400